I respectfully request two minutes for rebuttal. Good morning. May it please the court. Appellant Sandra Edmonds is permanently disabled with significant mobility impairment and must use a walker, cane, or occasionally a wheelchair to navigate. On three separate occasions, once in January of 2020 and twice in September of 2020, Ms. Edmonds encountered multiple barriers at Appellee's property, which denied her full and equal access of the accommodation, services, and privileges offered at the property. Where on a business, CVS was located. Ms. Edmonds testified that this CVS was her go-to store and was located and is located six blocks from her home. Ms. Edmonds testified that this continued to be her go-to store for years until she encountered these problems. Ms. Edmonds alleged in her original complaint and also in her first amended complaint, which was her operative complaint, that she encountered multiple barriers, including excess changes in level at the weather strip of the entrance of the CVS. So about the weather strip, it seems like the district court tried to separate out violations that your client said she encountered at some point and other ones that were continuing. Like, and the complaint has the language that sounds like some are continuing and some might have not been continuing, and then there's the mootness question where she files a supplemental thing and talks about what's continuing. It seems like she never alleged that the weather strip was continuing. Am I right about that? During her testimony, she explained that she did encounter the weather strip on the three occasions that she encountered problems. However, it is correct that no evidence was presented by either Ms. Edmonds or her expert, John Batista, who's a certified access specialist at CASP. No evidence was produced to show that that issue remained. However, it's an important issue. It's important to note that the district court did not analyze the weather strip. The district court in- If your client didn't say it was still a problem, why should the district court have analyzed it? Because this is only for injunctive relief, right? That is correct. A number of the issues that Ms. Edmonds alleged in her operative complaint were shown to remain on the property. It seems like the north side violations are what's continuing, if I've understood it correctly. Can you let me know if I'm wrong about that? As provided by the certified access specialist expert, four violations remained on the south side, and five violations remained on the north side. It is important to note that during her testimony, Ms. Edmonds only discussed parking on the south side. So, counsel, the problem that I have with your argument is the district court's finding that he didn't believe your client. And, you know, we've all read the transcript. I found it a very painful transcript to go through. A lot of distracting things were occurring during your client's testimony. But the district court made a factual finding that he didn't believe the parts of her testimony that are required to establish your ability to go forward in this case. And even if we, had we been sitting there, might have found your client credible or might not have discounted the crucial parts of her testimony, the standard is very, very deferential. How can we, basically not having been there, set no district court abuse as discretion in finding your client not credible? The court made a clear error in inaccurately stating that Ms. Edmonds had not alleged the weather strip in her operative complaint. And that influenced her credibility determination, particularly because Ms. Edmonds provided significant testimony detailing the problems that she encountered with the weather strip on all three visits alleged. But on the issue on the weather strip, the court made a finding after describing things, the district court, that he found troubling about your client's testimony. Quote, the court, therefore, does not believe she encountered uneven payment or an obscured sign. And without that, and putting aside for the minute the weather strip testimony that you talked about with Judge Friedland, I mean, how do we get past that? Again, I think it, by inaccurately saying that she had not pled the weather strip issue, and the fact that she spent significant testimony discussing it, would lead one to conclude that the weather strip issue was a fabrication. But what I see in the district court's findings is the client's testimony was not credible. She made numerous unresponsive and unlisted remarks, had to be reminded not to talk over the court or counsel and not to volunteer statements. Her manner in testifying was combative, and she was vague in her descriptions. And then I find her, the district court said, I find her not credible. I mean, I don't see anything about the weather strip there. So, again, it's hard for me to see how we can get around that. In finding that the plaintiff was not credible, the district court judge said that based on the evidence that he reviewed, he didn't find it compelling that the issues that plaintiff alleged that continued to exist, that the issues that plaintiff alleged, ultimately he concluded that they either never existed in the first place or had been fully remediated. And so to conclude that they never existed in the first place, again, it does speak to the credibility determination. Although, again, the district court simply said he didn't believe that she encountered uneven pavement or an obscured sign. And that went to the district court's view of standing. He didn't find that those things may or may not have been there. He found he didn't believe your client encountered them. The court also made an error in making the credibility determination based on the fact that plaintiff did provide, the fact that plaintiff was disturbed by a number of things. And the thing that from the testimony she was most disturbed by was the fact that photographs were taken of her the day before. Those photographs were not admitted into evidence, but significant time and energy was spent at trial regarding those photographs. And plaintiff's feelings and reactions to that influenced the way in which she testified. But that in and of itself is not enough to show that plaintiff was not credible. Plaintiff was frustrated. Plaintiff is a lay person who does not regularly go in front of tribunals. And plaintiff did struggle on the stand. However, this is not sufficient to show that she's not credible. Do you want to save the balance of your time for rebuttal? Yes, please. Okay, very good. Let's hear from counsel for the dependent. Thank you and good morning, Your Honors. The court certainly needs no primer on the ADA. All too familiar with its contours, its non-nuances, and the fact that probably tens of thousands of ADA cases have been filed, if not in this circuit alone. But for all the cases that are filed, for all the motions that are brought, very few come to trial, and even fewer on appeal after a trial. And as the court correctly noticed in the questions that were asked in the first ten minutes of the hearing of this case, it comes down to the judge sitting as the trier of fact who is in the courtroom and is the person best able to assess in the search for truth the credibility of everyone appearing before the bench. The weather strip has somehow taken on a life of itself. Sorry, can I stick with the credibility for a second because we don't have a lot of time? So the judge was upset that Ms. Edmonds made unsolicited remarks and was combative. Those things don't seem to go to credibility. Maybe the vagueness, so he said, as I understand it, the court said three things, unsolicited remarks, combative, and vague. I don't see how the unsolicited remarks and the combative show a lack of credibility. They might have showed that she was upset, but I don't know why that would go to credibility. It doesn't make sense to me. Maybe you could speak to that. And then the second question is, if all we're left with is vagueness, which responses were vague? Absolutely. So you're right. Credibility and demeanor are two different things, but each one of them in complementary fashion is what allows the judge the assessment of both of those or what allows the judge to appreciate the manner in which the testimony is given and what weight should be given to it. In terms of the vagueness, we know we can very specifically go to the trial transcript at page 31, which is in the excerpts of record, at pages 37 and 38, where she's very specifically asked about the weather strip. And between, it's in the excerpts of record, page 37 at line 7 to the next page at 4, she's asked about the conditions that she experienced. Set aside the complaint. Set aside the pleading. Set aside the judge's footnote about weather strips. She is asked, was there a difference between December of 2019 and January of 20? Those two dates are important because she doesn't complain about December of 2019. Now, it would seem odd that a weather strip or a threshold would have been changed in that month, and there's no evidence that it was. But why is it what she was saying that she wasn't in pain on the first date but was on the second, so the weather strip was a problem in one and not the other? I thought that's what she was saying, even if it's not, the questioning gets broken up a little bit. In fact, what she was saying was really two different things, the first of which is that she didn't recall or discern a difference between the conditions in December of 2019 and January of 2020. Then, when she's very specifically asked about what aspect of it would have been a problem, her response was, well, I don't notice something if it's not a problem. She doesn't notice it's changed. Now, that certainly brings up an important question. Can a person's disability or alleged disability be of such a transient or amorphous nature that on one day it affects them, on another day it doesn't? Well, this evidence certainly could have offered evidence of as much, but she didn't. Instead, it became this feeling or impression on her part of what would affect her and what might not affect her. But let's stick to the question. So are you suggesting, I mean, that line of reasoning suggests that maybe she wasn't disabled enough or something, but I didn't understand the judge to be really questioning whether she was disabled. That doesn't seem to be the basis of the adverse credibility ruling. Correct. So what the judge looked at are a number of things. If we look back at how we address literally the constitution of the case and controversy issue, a person has to demonstrate a disability, an experience with a condition at the property, that affects them in light of that disability such that their ability to patronize or to access a public facility is rendered more difficult. A very relaxed view of that. The judge is looking throughout trial for misheadings on the day of trial to explain how a condition at that property affected her ability to come and go. The testimony that she offered as reflected in the transcript on cross-examination was, I wouldn't even say it rose to the level of ambiguity. She seemed positively indifferent about recalling in that moment, the most important moment in the case, quite frankly, at trial on cross-examination, when you began to ask questions, not necessarily questions that you wanted in the way that you wanted them, and all you have to do is give an answer that the judge believes. The judge not only asked to that, but as to other items, what he referred to as this indifference about returning to the property, found her claim that she was personally affected and would be affected again, and thereby justify the invoking of the court's jurisdiction, was lacking. That's not just based on a discussion of a weather strip. It's not just based on her apparently being upset about pictures. It was about the fact that this was her day in the life of the case to prove that she was entitled to relief. But we do have to go beyond that, because as was noted this morning and as the court correctly observed, the only relief available under the ADA, the federal remedy, is injunctive relief. And it's important to note that, as this court has many times remarked, that it's not meant to be dragged into a fishing expedition, but also that the record placed before the court should not be the product of cherry picking. It's interesting to note that there were significant documents that were originally omitted from the excerpts of record and are included in the supplemental excerpts, and these include plaintiffs to expert reports. And in both of them, there is no mention of this condition. So even if we're talking about the weather strip. I'm not sure why the weather strip matters, though, because the reports do talk about violations on the north side, and I understand there was construction that may have fixed the problems on the south side. But if the north side violations are ongoing, our cases talk about having standing to challenge things you haven't personally encountered. So I don't understand why the north side issues are off the table and why the weather strip even matters. The north side issues are off the table for a number of reasons. First, foremostly of which is that those parking spaces were allocated for use by the other businesses. There was no controverting of this testimony. I don't understand. What does that have to do with anything? The reason is the line of cases to which I believe the court is making reference is what is commonly referred to as the Duran case. Yeah, Duran and Chapman. Correct. And in these cases, they talk about the fact that one can more broadly claim conditions of the property, although not personally encountered, affect the ability to patronize the business. I finished the thought there because Duran and Chapman cannot be separated from the constitutional threshold issue. One has to have an interest in the outcome. Mine versus the city of Los Angeles, there must be an absolute interest. If she encountered problems on the south side and then those were fixed, those might not still be an issue for injunctive relief, but she would have standing based on the violations on the south side to challenge the violations on the north side, right? In fact, she wouldn't have standing. So what happened is and what happens is that Duran is read too broadly. The classic example that one might give is of two independent businesses, both of which sit on the same parcel. A plaintiff has no interest in going to the second business whatsoever. I never understood you to have set a trial that the north side part of the expert report was irrelevant because it was the wrong business. In fact, the exhibits that were offered into evidence in the court considered, as was noted in the supplemental excerpts of record of page 84, this is beginning in 84, the plaintiff's exhibits and then 85, the defendant's exhibits, show the introduction, the admission of the exhibits that were reminded upon and it could have been reminded upon certainly by the court, in determining what conditions existed and which ones related then back to the claim. The court correctly noted that with respect to Ms. Sedman's allegations regarding her patronage of the business, that firstly we would note that there's only a requirement of one accessible entrance and there was accessible parking specifically devoted to the usage of that entrance. All of that was not simply the subject of remediation but complete reconstruction. As a matter of fact, the first of Plaintiff's Expert Reports showed that entire entryway and that portion of the parking lot under reconstruction. So the conditions that would have affected her ability to patronize the CVS were completely remediated. The trial court was right in its conclusions regarding her interest in returning to the property and there was no basis. So you're running out of time so can I just ask one other question? Am I right that you haven't argued that we could affirm on the alternative ground that Barb Chester is a private entity that isn't the right defendant or anything like that? No, there's no question about the entities and if I may just very briefly, there were two entities that were originally sued. One of them is no longer moving forward. There was never a question. We talked about CVS, Barb Chester. We've never made the claim whether the district court or before this court that a wrong party was present. Thank you. All right, thank you very much for your argument. You have a little bit of time for a bubble if you'd like. Disability is often contextual and dynamic. Ms. Edmonds provided ample testimony and evidence that her significant mobility impairment and pain are sometimes better and sometimes worse depending on the circumstances. Some of the barriers Ms. Edmonds encountered were shown by her expert to continue to remain. Her testimony regarding these barriers sometimes contained more detail and at other times contained less detail, which does not go against her credibility. In fact, it's consistent with credibility that some details are remembered better by others and certainly some conditions are more impactful and therefore more memorable. Particularly the wheel stop that Ms. Edmonds testified to is important. That's located, was shown by her expert to be located on the south side, and it was infringing into the access level, the access aisle, which separates the designated disabled parking spaces and allows for someone with significant mobility impairment to successfully and safely navigate into the business. She provided ample testimony on this, and this was alleged in her operative complaint as being excess changes in level. In short, in conclusion, the district court made a clear error in making its determinations against Appellant. Thank you for your argument.
judges: WATFORD, FRIEDLAND, BENNETT